# Illinois Official Reports

## Appellate Court

***Illinois Coin Machine Operators Ass'n v. County of Cook,***
**2015 IL App (1st) 150547**

| | |
|---|---|
| Appellate Court Caption | ILLINOIS COIN MACHINE OPERATORS ASSOCIATION, an Illinois Non-Profit Organization; GAMING AND ENTERTAINMENT MANAGEMENT—ILLINOIS, LLC, an Illinois Limited Liability Company; and ACCEL ENTERTAINMENT GAMING, LLC, an Illinois Limited Liability Company, Plaintiffs-Appellants, v. THE COUNTY OF COOK; THE COOK COUNTY DEPARTMENT OF REVENUE; and ZAHRA ALI, as Director of the Cook County Department of Revenue, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-0547 |
| Filed | December 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-050995; the Hon. James M. McGing, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Douglas M. Ramsey and Richard Y. Hu, both of Taft Stettinius & Hollister LLP, of Chicago, for appellants.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Daniel F. Gallagher, Kent S. Ray, and James Beligratis, Assistant State's Attorneys, of counsel), for appellees. |

| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. |
| | Presiding Justice Reyes and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1     The instant appeal arises from a lawsuit challenging the Cook County Gambling Machine Tax Ordinance (Tax Ordinance) (Cook County Ordinance No. 12-O-62 (approved Nov. 9, 2012)), filed by plaintiffs, the Illinois Coin Machine Operators Association, Gaming and Entertainment Management–Illinois, LLC, and Accel Entertainment Gaming, LLC. The trial court granted summary judgment in favor of defendants the County of Cook (County), the Cook County Department of Revenue, and the Director of the Cook County Department of Revenue, finding that the Tax Ordinance (1) was not preempted by the Riverboat Gambling Act (230 ILCS 10/1 *et seq.* (West 2012)), (2) pertained to the County's government and affairs such that it fell within the County's home rule authority, (3) was not an impermissible occupation tax, and (4) was not an impermissible license for revenue. Plaintiffs appeal and, for the reasons that follow, we affirm.

¶ 2                                    BACKGROUND
¶ 3                                 I. Tax Ordinance
¶ 4     We recently set forth the provisions of the Tax Ordinance in our opinion in *Midwest Gaming & Entertainment, LLC v. County of Cook*, 2015 IL App (1st) 142786, *appeal denied*, No. 119883 (Ill. Nov. 25, 2015), and that description of the Tax Ordinance is equally applicable to the instant case.

¶ 5     On November 9, 2012, the County enacted the Tax Ordinance, which imposed registration and tax requirements on "Gambling Machines" displayed for play or operation by the public within the County. "Gambling Machines" were defined as either a "Gambling Device" as defined by the Tax Ordinance or a "video gaming terminal" as defined by the Video Gaming Act (230 ILCS 40/5 (West 2012)). Cook County Ordinance No. 12-O-62, § 74-626 (approved Nov. 9, 2012). A "Gambling Device" was defined by the Tax Ordinance as "a machine or mechanical, electrical, or electronic device utilized in or primarily designed for gambling, and includes any clock, tape machine, slot machine, video machine, or other machine, for the reception of money or other thing of value on chance or skill is staked, hazarded, bet, won or lost, but does not include gambling devices excepted from the Illinois Criminal Code, 720 ILCS 5/28-2(a)(1) through 5/28-2(a)(4) or video gaming terminals, as defined in the Illinois Video Gaming Act, 230 ILCS 40/5." Cook County Ordinance No. 12-O-62, § 74-626 (approved Nov. 9, 2012). A "Video Gaming Terminal" was defined by the Tax Ordinance nearly identically with its definition in the Video Gaming Act and was defined as "any electronic video game machine that, upon insertion of cash, is available to play or simulate the play of a video game, including, but not limited to, video poker, line up, and blackjack, utilizing a video display and microprocessors in which the player may receive free games or credits that can be redeemed for cash and as further defined under the Video Gaming Act, 230

- 2 -

ILCS 40/5. The term does not include a machine that directly dispenses coins, cash, or tokens or is for amusement purposes only." Cook County Ordinance No. 12-O-62, § 74-626 (approved Nov. 9, 2012). Thus, according to the Tax Ordinance, a slot machine at a casino would be a typical gambling device, while a video poker machine at a bar or restaurant would be a typical video gaming terminal. Both machines would be considered gambling machines.

¶ 6    Under the Tax Ordinance, all owners of gambling machines to be played or operated by the public at any place in the county, and those people currently displaying gambling machines to be played or operated by the public at any place owned or leased by them, were required to register with the County's Department of Revenue that they owned or displayed such gambling machines by June 21, 2013. Cook County Ordinance No. 12-O-62, § 74-627(a) (approved Nov. 9, 2012). Additionally, the Tax Ordinance imposed a tax upon each gambling machine that was displayed by a person for play or operation by the public in the county (tax). Cook County Ordinance No. 12-O-62, § 74-628 (approved Nov. 9, 2012). The Tax Ordinance imposed separate tax rates for gambling devices and video gaming terminals. For gambling devices, the Tax Ordinance imposed an annual tax of $1,000 per gambling device, while for video gaming terminals, the Tax Ordinance imposed an annual tax of $200 per video gaming terminal. Cook County Ordinance No. 12-O-62, § 74-628(a), (b) (approved Nov. 9, 2012). Both subsections provided that "said tax shall be paid by the owner." Cook County Ordinance No. 12-O-62, § 74-628(a), (b) (approved Nov. 9, 2012).

¶ 7    Before any gambling machine was made available for use by the public, the owner was required to remit the tax due to the Cook County Department of Revenue, after which the director would issue a tax emblem to be affixed to the gambling machine as evidence of the payment. Cook County Ordinance No. 12-O-62, § 74-629 (approved Nov. 9, 2012). The Tax Ordinance provided that "[n]o owner or person shall make a Gambling Machine available for play or operation by the public in the county unless (1) the tax has been paid on said Gambling Machine and is evidenced by the tax emblem conspicuously affixed to the Gambling Machine; and (2) the Gambling Machine is plainly labeled with the name, address and telephone number of the person displaying the Gambling Machine for play or operation by the public, and such information as may be required by the director through policy, procedure, rule, or form." Cook County Ordinance No. 12-O-62, § 74-629(c) (approved Nov. 9, 2012).

¶ 8    The Tax Ordinance provided that it was unlawful for any owner or person to display a gambling machine for play or operation by the public within the county unless (1) the owner of the gambling machine and the person displaying it registered with the Department of Revenue; (2) the tax was paid and was evidenced by the presence of the tax emblem conspicuously affixed to the gambling machine; and (3) the gambling machine was labeled with the name, address, and telephone number of the owner of the gambling machine. Cook County Ordinance No. 12-O-62, § 74-634(a) (approved Nov. 9, 2012). If, at any time, a gambling machine did not bear the tax emblem, the owner of the gambling machine and the person displaying the gambling machine would be jointly and severally liable for a fine of $1,000 for a first offense and $2,000 for any subsequent offense. Cook County Ordinance No. 12-O-62, § 74-634(a) (approved Nov. 9, 2012). The Tax Ordinance provided that "[e]very day such violation continues shall constitute a separate and distinct offense." Cook County Ordinance No. 12-O-62, § 74-634(a) (approved Nov. 9, 2012).

¶ 9    The Tax Ordinance provided that representatives of the County's Department of Revenue "shall be permitted to inspect any premises for the display of Gambling Machines" (Cook

County Ordinance No. 12-O-62, § 74-636 (approved Nov. 9, 2012)) and further provided that "[i]t shall be unlawful for any owner or person to prevent, or hinder a duly authorized Department representative from performing the enforcement duties provided in this Article" (Cook County Ordinance No. 12-O-62, § 74-636 (approved Nov. 9, 2012)). Finally, the Tax Ordinance provided that "[t]he department [of revenue] shall enforce this Article and the Sheriff and the Sheriff's Police are authorized to assist the Department, in said enforcement, including issuing citations hereunder." Cook County Ordinance No. 12-O-62, § 74-639 (approved Nov. 9, 2012). The Tax Ordinance also gave rulemaking authority to the Department of Revenue, providing that "[t]he department may promulgate policies, procedures, rules, definitions and forms to carry out the duties imposed by this ordinance. As far as practicable in accordance with the purposes of this ordinance, such procedures, regulations, rules, policies, and forms shall be consistent with the practices of the Gambling Machine industry." Cook County Ordinance No. 12-O-62, § 74-637 (approved Nov. 9, 2012).

¶ 10                                    II. Complaint

¶ 11      On October 30, 2013, plaintiffs filed a verified complaint for injunctive relief and for declaratory judgment. The complaint alleged that the Illinois Coin Machine Operators Association (ICMOA) is a "non-profit organization comprised of businesses that share the common goal of the promotion and survival of the coin-operated amusement machine industry in the State of Illinois." The complaint alleged that ICMOA had members, including plaintiffs Gaming and Entertainment Management–Illinois, LLC, and Accel Entertainment Gaming, LLC, that displayed video gaming terminals for play or operation by the public within the boundaries of the County after being licensed as terminal operators by the Illinois Gaming Board. Accordingly, such members were subject to the tax requirements of the County's Tax Ordinance. The complaint alleged that the 12 members of the ICMOA currently operating video gaming terminals within the County operated more than 936 video gaming terminals within the County and timely filed their registration applications and paid the County's tax pursuant to the Tax Ordinance under protest.

¶ 12      Plaintiffs sought an injunction to bar the application and enforcement of the Tax Ordinance and a declaration that the Tax Ordinance was void, alleging that the County did not have the authority to impose the Tax Ordinance because (1) the State's traditional role in regulating and taxing gambling precluded the County from exercising its home rule powers in the same area, (2) the Video Gaming Act (230 ILCS 40/1 *et seq.* (West 2012)) prohibited the imposition of additional taxes on licensed terminal operators, (3) the Tax Ordinance was an impermissible occupation tax, (4) the Tax Ordinance was an impermissible license for revenue, and (5) the Tax Ordinance violated the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).[1]

¶ 13      Count I of the complaint alleged that the Tax Ordinance does not pertain to the County's government and affairs as required by article VII, section 6(a) of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(a)) because the regulation and taxation of gambling has traditionally been managed by statewide, not local, legislation. Count I sought a declaration that the Tax

_____

[1] While plaintiffs include a due process claim in their list of ways the Tax Ordinance is unconstitutional, there is no count in the complaint concerning due process, nor is due process an issue in the instant appeal.

Ordinance was unconstitutional because it did not regulate and tax an area that pertains to the County's government and affairs as required by the Illinois Constitution; and a temporary, preliminary, and permanent injunction enjoining the enforcement of the Tax Ordinance against the members of the ICMOA.

¶ 14    Count II of the complaint alleged that the Video Gaming Act exclusively regulated and taxed video gaming and the Tax Ordinance improperly interfered with that exclusive jurisdiction. Count II alleged that the Video Gaming Act incorporated the provisions of the Riverboat Gambling Act, including section 21, which provided that " '[l]icensees shall not be subjected to any excise tax, license tax, permit tax, privilege tax, occupation tax or excursion tax which is imposed exclusively upon the licensee by the State or any political subdivision thereof, except as provided in this Act.' " (quoting 230 ILCS 10/21 (West 2012)). Accordingly, count II alleged that the Tax Ordinance was explicitly prohibited by the legislature's incorporation of section 21 into the Video Gaming Act. Count II sought a declaration that the Video Gaming Act prohibited the County from imposing the Tax Ordinance, and a temporary, preliminary, and permanent injunction enjoining the imposition and enforcement of the Tax Ordinance against the members of the ICMOA.

¶ 15    Count III of the complaint alleged that the Tax Ordinance imposed an impermissible occupation tax on plaintiffs. Count III alleged that the Tax Ordinance levied a tax that specifically burdened the privilege of operating a gambling operation and that such a tax was expressly prohibited by section 21 of the Riverboat Gambling Act (230 ILCS 10/21 (West 2012)), which was incorporated into the Video Gaming Act. Count III sought a declaration that the Tax Ordinance imposed an occupation tax that was prohibited by the Video Gaming Act and the Illinois Constitution, as well as a temporary, preliminary, and permanent injunction enjoining the imposition and enforcement of the tax against the members of the ICMOA.

¶ 16    Count IV of the complaint alleged that the Tax Ordinance imposed an impermissible license for revenue on plaintiffs. Count IV alleged that the County relied on its police power to raise revenue through the Tax Ordinance because the County lacked home rule authority to regulate and tax gambling. Accordingly, count IV alleged that the Tax Ordinance was an impermissible license for revenue. Count IV sought a declaration that the Tax Ordinance was a license for revenue that was prohibited by the Video Gaming Act and the Illinois Constitution, as well as a temporary, preliminary, and permanent injunction enjoining the imposition and enforcement of the Tax Ordinance against the members of the ICMOA.

¶ 17                                    III. Motion to Dismiss
¶ 18    On December 18, 2013, defendants filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). Defendants argued that counts I through IV of the complaint did not state a cause of action and should be dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)) and further argued that the ICMOA should be dismissed as a party plaintiff under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)) because it lacked standing. On September 29, 2014, the trial court denied the motion to dismiss.

¶ 19                                 IV. Motions for Summary Judgment
¶ 20    On November 7, 2014, defendants filed a motion for summary judgment, arguing that (1) the General Assembly had not preempted the County from taxing gambling machines, (2) the

tax was authorized by section 5-1009 of the Counties Code (55 ILCS 5/5-1009 (West 2012)), and (3) the tax was a valid tax and was not an improper attempt to raise revenue through the exercise of the County's police power.

¶ 21   On November 14, 2014, plaintiffs also filed a motion for summary judgment, arguing that (1) the Tax Ordinance was invalid as a matter of law because it violated the express terms of section 21 of the Riverboat Gambling Act, (2) the County had no home rule authority to pass the Tax Ordinance because licensed gambling was a statewide concern and did not pertain to the government and affairs of the County, (3) the County's tax was an impermissible tax on the occupation of licensed gambling in Illinois, and (4) the Tax Ordinance was an impermissible license for revenue.

¶ 22   Attached to plaintiffs' motion for summary judgment was a printout of an article purportedly from the County's website concerning the Tax Ordinance.[2] The article, which was dated October 30, 2012, and was authored by "Communications Staff," stated that county president Toni Preckwinkle "decided to create a tiered system, taking into consideration the potential daily revenue of machines and the impact they have on public health and safety in Cook County." The article quoted Preckwinkle as saying, " 'We plan to tax them a little more than one day's revenue,' " and further quoted her as saying, " 'It's a small price to pay to help with the impact on crime, health and addiction. And we've reduced the impact on smaller mom and pop establishments.' " The article indicated that "[t]he additional revenue generated by this tax will help the County invest in public safety and criminal justice services to combat the negative impacts of compulsive gambling and other gambling addictions."

¶ 23   On January 27, 2015, the trial court issued a written opinion granting defendants' motion for summary judgment and denying plaintiffs' motion for summary judgment. With respect to the question of whether section 21 of the Riverboat Gambling Act preempted home rule taxation, the court found that phrase " 'the State or any political subdivision thereof' " applied to home rule units. The court found that, while the Riverboat Gambling Act "may not spell out 'home rule unit', it clearly specifies that all subdivisions of the State of Illinois are prohibited from imposing an enumerated list of taxes on [Riverboat Gambling Act] licensees and that would include home rule units." However, the court agreed with defendants that the preemption of taxes was not passed by a three-fifths majority as was required by the constitution in order to restrict a home rule unit's ability to tax. While the court acknowledged that the provision of the Video Gaming Act that incorporated the Riverboat Gambling Act was passed by a three-fifths majority, the court found that "it is not through the [Video Gaming Act], but through the provisions of the [Riverboat Gambling Act], that the General Assembly is seeking to limit the County's power to tax. As the [Riverboat Gambling Act] itself was not passed by a three-fifths majority, it does not matter that the [Video Gaming Act] was passed by a super-majority." Consequently, the trial court found that the Video Gaming Act did not preempt the County's imposition of the tax and granted defendants' motion for summary judgment on count II of the complaint.

---

[2]The article is still available on the County's website. Cook County Government, *President Preckwinkle Announces Adjustment to Proposed Tax on Gambling Machines* (Oct. 30, 2012), http://www.cookcountyil.gov/2012/10/30/president-preckwinkle-announces-adjustment-to-proposed-tax-on-gambling-machines/.

¶ 24 With respect to the issue of whether the Tax Ordinance pertained to the County's government and affairs, the court agreed with defendants that plaintiffs' fact-based standard applied only to home rule regulatory measures, not to home rule taxes and noted that, "[i]n fact, the Court cannot find any case where an Illinois court has found a home rule tax does not pertain to the home rule unit's 'government and affairs' under Section 6(a) based upon the State's 'vital interest' in the regulation of the field into which the tax has been applied." The court also agreed with defendants that "what must pertain to a home rule unit's 'government and affairs' for purposes of Section 6(a) in a case involving a home rule tax is the power to tax itself and not the area or subject in which the tax has been applied," noting that all of plaintiffs' cited cases involved the home rule regulatory power, violated another constitutional provision, or had extraterritorial effect, none of which applied to the Tax Ordinance. The court further found that the state's comprehensive regulation of gambling operations did not render the Tax Ordinance outside the scope of the County's home rule authority, noting that "[c]omprehensive regulation by the State in the field to which a home rule tax has been enacted cannot operate to preempt a tax or declare it beyond the scope of the home rule unit's 'government and affairs.' " Accordingly, the court found that the Tax Ordinance did not violate article VII, section 6(a) of the Illinois Constitution and granted defendants' motion for summary judgment on count I of the complaint.

¶ 25 With respect to the issue of whether the tax was an impermissible occupation tax, the court found that the tax was being imposed on a tangible object–a gambling machine–which was owned and temporarily held out for use by plaintiffs to the consuming public and was easily able to be segregated from any services that plaintiffs may provide in connection with it. The court thus found that "[t]axes based upon the temporary transfer of these boxes are not occupation taxes as no services are involved." The court further found that regardless of whether the tax was an occupation tax, the tax was expressly authorized by the General Assembly through section 5-1009 of the Counties Code because it fell within subsection (7), which permitted a home rule unit to impose a tax " 'not based on the selling or purchase price or gross receipts from the use, sale or purchase of tangible personal property' " (quoting 55 ILCS 5/5-1009(7) (West 2012)). Consequently, the court found that the tax was not an unconstitutional occupation tax and granted defendants' motion for summary judgment on count III of the complaint.

¶ 26 Finally, with respect to the issue of whether the tax was an unconstitutional license for revenue, the court first noted that "the Tax is a valid tax. It is therefore not an improper license for revenue but a proper exercise of the County's home rule power to tax." The court found that the enforcement provisions contained in the Tax Ordinance did not transform it into a license for revenue, noting that such provisions were "common to most taxing statutes and ordinances." Accordingly, the trial court granted defendants' motion for summary judgment on all counts.

¶ 27 This appeal follows.

¶ 28 ANALYSIS

¶ 29 On appeal, plaintiffs argue that the trial court erred in denying their motion for summary judgment and granting defendants' motion for summary judgment and finding the Tax Ordinance (1) was not preempted by section 21 of the Riverboat Gambling Act as incorporated into the Video Gaming Act, (2) pertained to the County's government and affairs and therefore

fell within the County's authority as a home rule unit, (3) was not an impermissible occupation tax, and (4) was not an impermissible license for revenue.

¶ 30 A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 31 "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). However, "[w]hen, as in this case, parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005) (citing *Continental Casualty Co. v. Law Offices of Melvin James Kaplan*, 345 Ill. App. 3d 34, 37-38 (2003)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 32 I. Preemption by Video Gaming Act

¶ 33 Plaintiff first argues that the trial court erred in finding that the General Assembly had not preempted the Tax Ordinance through the Video Gaming Act's incorporation of section 21 of the Riverboat Gambling Act. Section 80 of the Video Gaming Act provides, in relevant part, that "[t]he provisions of the Illinois Riverboat Gambling Act, and all rules promulgated thereunder, shall apply to the Video Gaming Act, except where there is a conflict between the 2 Acts." 230 ILCS 40/80 (West 2012). One of the sections of the Riverboat Gambling Act thus incorporated into the Video Gaming Act was section 21, which provides:

> "Limitation on taxation of licensees. Licensees shall not be subjected to any excise tax, license tax, permit tax, privilege tax, occupation tax or excursion tax which is imposed exclusively upon the licensee by the State or any political subdivision thereof, except as provided in this Act." 230 ILCS 10/21 (West 2012).

There is no dispute that section 21 of the Riverboat Gambling Act was not passed by a three-fifths majority, while section 80 of the Video Gaming Act was.

- 8 -

¶ 34        In the case at bar, the trial court found that the language of section 21 operated to preempt the Tax Ordinance, but could not be used to limit a home rule unit's authority to tax because section 21 was not passed by a three-fifths majority. Under the Illinois Constitution, except as limited by article VII, section 6 of the constitution, a home rule unit such as the County "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). However, the General Assembly "may *** preempt the exercise of a municipality's home rule powers by expressly limiting that authority." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 31 (citing *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287 (2001)). Under article VII, section 6(h), "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power." Ill. Const. 1970, art. VII, § 6(h). With respect to the power to tax, "[t]he General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State." Ill. Const. 1970, art. VII, § 6(g).

¶ 35        On appeal, plaintiffs argue that the trial court incorrectly found that the Tax Ordinance was not preempted because the requirements of a three-fifths majority were not satisfied but also argue that the trial court correctly determined that the language of section 21 was sufficiently specific to apply to home rule units. We have no need to decide the merits of the three-fifths majority argument, because we cannot find that the language of section 21 preempts taxation by a home rule unit.

¶ 36        We recently considered the question of whether section 21 was sufficiently specific to restrict a home rule unit's power to tax in *Midwest Gaming*, 2015 IL App (1st) 142786, ¶¶ 68-73, and answered that question in the negative. Our analysis there applies equally to the case at bar.

¶ 37        "If the legislature intends to limit or deny the exercise of home rule powers, the statute must contain an express statement to that effect." *Palm*, 2013 IL 110505, ¶ 31 (citing *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 108 (1981)). The General Assembly has codified the principle that "[t]o restrict the concurrent exercise of home rule power, the General Assembly must enact a law *specifically* stating home rule authority is limited" through section 7 of the Statute on Statutes. (Emphasis in original.) *Palm*, 2013 IL 110505, ¶ 32 (citing 5 ILCS 70/7 (West 2010)). Under the Statute on Statutes, the General Assembly has provided that "[n]o law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 2012). Section 7 of the Statute on Statutes "has been formally adopted as part of [the supreme] court's home rule jurisprudence." *Palm*, 2013 IL 110505, ¶ 32 (citing *Schillerstrom Homes*, 198 Ill. 2d at 287).

¶ 38        In the case at bar, as in *Midwest Gaming*, plaintiffs argue that the language of section 21 is sufficiently specific to deny the County's home rule authority to tax through its reference to "the State or any political subdivision thereof." 230 ILCS 10/21 (West 2012). Plaintiffs point to *City of Chicago v. Shayne*, 46 Ill. App. 2d 33, 36 (1964), in which a statute referring to " 'the

State or any political subdivision thereof' " was applied to the City of Chicago (quoting Ill. Rev. Stat. 1959, ch. 43, § 130). They also cite *Clare v. Bell*, 378 Ill. 128, 132 (1941), which contains a reference to a county being "a mere political subdivision of the State." However, these cases are of limited use, as they predate the 1970 Illinois Constitution, which established the concept of home rule and distinguished between home rule and non-home-rule units of local government. See *American Telephone & Telegraph Co. v. Village of Arlington Heights*, 156 Ill. 2d 399, 420 (1993) ("home rule units did not exist in this State until after the ratification of the 1970 Illinois Constitution"). Prior to the 1970 constitution, all units of local government were permitted only those powers granted to them by law. *Alarm Detection Systems, Inc. v. Village of Hinsdale*, 326 Ill. App. 3d 372, 377 (2001). Thus, the fact that the term "political subdivision" was used in those cases sheds no light on the issue in the instant case.

¶ 39   Plaintiffs attempt to rebut this argument, which is made by defendants in their appellate brief, by arguing that "[t]he General Assembly uses the term 'political subdivision' in its plain and ordinary sense, encompassing both home-rule units and non-home-rule units." However, their own citation demonstrates that when the legislature wants to ensure that the term applies to a home rule unit, it further clarifies the term. See *Village of Schaumburg v. Doyle*, 277 Ill. App. 3d 832, 840 (1996) (discussing section 3 of the Pesticide Act, which provided that " '[t]he regulation of pesticides by any political subdivision of this State, *including home rule units*, is specifically prohibited' " (emphasis added) (quoting 415 ILCS 60/3(4) (West 1992))). Plaintiffs also point to the Compassionate Use of Medical Cannabis Pilot Program Act, noting that section 200 provides that "[t]he tax imposed under this Act shall be in addition to all other occupation or privilege taxes imposed by the State of Illinois or by any municipal corporation or political subdivision thereof" (410 ILCS 130/200 (West 2014)), and arguing that "[b]y Defendants' logic, Defendant Cook County cannot impose its own tax on medical cannabis because this provision fails to *** expressly state that it applies to 'home rule units.' " Leaving aside any interpretation of the Compassionate Use of Medical Cannabis Pilot Program Act, plaintiffs' argument ignores the fundamental difference between a statute granting powers and a statute restricting powers, the latter of which must be done with specificity if it is to apply to a home rule unit.

¶ 40   Furthermore, while the term "any political subdivision" *can* be interpreted to include home rule units in certain contexts, "here, the language of the statute, quite simply, is not specific enough for us to reach that conclusion." *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 71. As we noted in *Midwest Gaming*, our constitution requires specificity when denying a home rule unit the use of its powers. *Palm*, 2013 IL 110505, ¶ 31; see also *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 158 Ill. 2d 133, 138 (1994) ("In order to meet the requirements of section 6(h), legislation must contain express language that the area covered by the legislation is to be exclusively controlled by the State."); *Mulligan v. Dunne*, 61 Ill. 2d 544, 550 (1975) ("a statute which purports to restrict home-rule powers must be specific"); *City of Chicago v. Roman*, 184 Ill. 2d 504, 520 (1998) (no preemption where "the Corrections Code, although quite comprehensive, does not expressly limit the concurrent exercise of the City's home rule power or require such exercise to conform to or be consistent with the Code"). The legislature has codified this principle through section 7 of the Statute on Statutes (*Palm*, 2013 IL 110505, ¶ 32), which, as noted, provides that "[n]o law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i),

- 10 -

(j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 2012). There can be no dispute that section 21 of the Riverboat Gambling Act does not "specifically set[ ] forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 2012). Accordingly, it does not preempt the Tax Ordinance and the trial court properly granted summary judgment in defendants' favor.

¶ 41                                  II. Home Rule Authority

¶ 42    Plaintiffs next argue that the trial court incorrectly found that the Tax Ordinance was within the scope of the County's home rule authority and argue that the Tax Ordinance does not pertain to the County's government and affairs. We recently considered a similar constitutional challenge in *Midwest Gaming*, 2015 IL App (1st) 142786, and our discussion of the law in that case is equally applicable here.

¶ 43    As noted, under the Illinois Constitution, except as limited by article VII, section 6 of the constitution, a home rule unit such as the County "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). "Section 6(a) was written with the intention to give home rule units the broadest powers possible." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30 (citing *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)). Furthermore, the constitution expressly provides that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 44    Our supreme court has "consistently recognized that the home rule provisions of the Illinois Constitution are intended to eliminate or at least reduce to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation of unexpressed legislative intention." (Internal quotation marks omitted.) *Palm*, 2013 IL 110505, ¶ 34. "The Illinois approach places almost exclusive reliance on the legislature rather than the courts to keep home rule units in line." (Internal quotation marks omitted.) *Palm*, 2013 IL 110505, ¶ 34. "[I]f the constitutional design is to be respected, the courts should step in to compensate for legislative inaction or oversight only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies." (Emphasis and internal quotation marks omitted.) *Palm*, 2013 IL 110505, ¶ 34. "[B]ecause the legislature can always vindicate state interests by express preemption, only vital state interests would allow a court to decide that an exercise of home rule power does not pertain to local government and affairs." *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 22. "Accordingly, '[i]f a subject pertains to local government and affairs, and the legislature has not expressly preempted home rule, municipalities may exercise their power.' " *Palm*, 2013 IL 110505, ¶ 36 (quoting *StubHub*, 2011 IL 111127, ¶ 22 n.2).

¶ 45    In the case at bar, plaintiffs argue that the Tax Ordinance does not pertain to the County's government and affairs and, therefore, was outside the scope of the County's home rule authority. We do not find this argument persuasive.

¶ 46    In *Midwest Gaming*, we found that the tax pertains to the County's government and affairs, "as it is a tax imposed by the County on the owners of gambling machines 'displayed by a

- 11 -

person for play or operation by the public in Cook County.' " *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 62 (quoting Cook County Ordinance No. 12-O-62, § 74-628(a), (b) (approved Nov. 9, 2012)). We continue to adhere to our reasoning and conclusion in that case.

¶ 47     Like the plaintiff in *Midwest Gaming*, plaintiffs here rely on our supreme court's decision in *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, and we continue to find this reliance to be unpersuasive. In that case, the City of Chicago (City) amended its amusement tax ordinance to require " 'reseller's agents' " to collect and remit the amusement tax. *StubHub*, 2011 IL 111127, ¶ 8. StubHub, which was considered a reseller's agent under the ordinance, argued that the City lacked the authority to impose such a requirement. *StubHub*, 2011 IL 111127, ¶ 17. Our supreme court determined that the State had a greater interest than the City in addressing the problem of tax collection by Internet auctioneers and concluded that the City's ordinance did not pertain to its own government and affairs. *StubHub*, 2011 IL 111127, ¶ 36.

¶ 48     Plaintiffs argue that "[s]ignificantly, the Illinois Supreme Court in *StubHub* concluded that a tax ordinance by itself, without more, was enough to interfere with the state's regulation of a particular industry (online auctioneers) to render the tax unconstitutional under Section 6(a)." However, we considered and rejected this exact argument in *Midwest Gaming* because it is not an accurate understanding of the holding of that case. There, we said:

> "The [*StubHub*] court specifically noted in its analysis that the City devoted considerable space in its briefs to defending its amusement tax ordinance as applied to ticket resales, '[b]ut the City has home rule authority to tax [citation], and statutory authority to tax amusements [citation]. Thus, the problem is not the tax, but its collection by internet auction listing services, whose users created a new market in online ticket resales.' *StubHub*, 2011 IL 111127, ¶ 26. Later, the court again noted that '[a]s the federal trial court correctly noted, "There is no doubt that the City has the authority to impose a tax on the venues that sell tickets to amusements." [Citation.] Additionally, "the parties do not dispute the fact that if a person sells a ticket for more than face value within the jurisdiction of the City of Chicago, he or she is required to pay the City's 8% amusement tax." [Citation.] The question posed by the federal appeals court here does not address the City's authority to tax ticket resales, but rather the City's authority to impose an obligation on internet auction listing services to collect this tax.' *StubHub*, 2011 IL 111127, ¶ 38. Thus, the supreme court made it perfectly clear that the tax itself was not at issue but only the regulatory ordinance requiring agents such as StubHub to collect and remit the tax. Here, by contrast, it is the tax itself at issue, and not any regulatory ordinance. Accordingly, *StubHub* does not provide any guidance in this area. See also *Chicago Park District v. City of Chicago*, 111 Ill. 2d 7, 13 (1986) (in discussing an earlier case, noting that '[t]he tax in [*Board of Education of School District No. 150 v. City of Peoria*, 76 Ill. 2d 469 (1979),] was not considered impermissible; the court held simply that burdening the school system with the *collection* of the tax was unconstitutional because it amounted to *regulation* of the statewide school system' (emphases in original))." *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 66.

Likewise, nearly all of the cases plaintiffs cite in the instant case were discussed and distinguished by us in *Midwest Gaming*, since the cited cases "involve either regulatory ordinances or taxes that have an extraterritorial effect, meaning that they extended beyond the home rule unit's local affairs." *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 67.

- 12 -

¶ 49    Instead, we noted: "we are presented with a taxing measure that seeks to tax gambling machines displayed for use within the boundaries of the County. Our supreme court has recognized that '[t]he framers of the 1970 Constitution considered the power to tax as essential to effective home rule and intended that power to be broad.' *Mulligan v. Dunne*, 61 Ill. 2d 544, 548 (1975). Here, we cannot agree with plaintiff that such a tax does not pertain to the County's local government and affairs." *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 64. Accordingly, we agree with the trial court that the Tax Ordinance pertains to the County's government and affairs and affirm its grant of defendants' motion for summary judgment.

¶ 50                              III. Occupation Tax

¶ 51    Plaintiffs next argue that the trial court erred in finding that the tax was not an impermissible occupation tax. Under the Illinois Constitution, "[a] home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." Ill. Const. 1970, art. VII, § 6(e). "[A]lthough section 6(e) permits taxes upon the sale or use of tangible items, the taxation of commercial services constitutes an 'occupation tax' which is prohibited unless sanctioned by the legislature." *Communications & Cable of Chicago, Inc. v. Department of Revenue*, 275 Ill. App. 3d 680, 685 (1995) (citing *Commercial National Bank v. City of Chicago*, 89 Ill. 2d 45 (1982)). The term "upon occupations" was not defined by the framers of the constitution. *Paper Supply Co. v. City of Chicago*, 57 Ill. 2d 553, 565 (1974). However, our supreme court has stated that " 'an occupation tax has one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession.' " *Town of Cicero v. Fox Valley Trotting Club, Inc.*, 65 Ill. 2d 10, 23 (1976) (quoting *Reif v. Barrett*, 355 Ill. 104, 109 (1933)).

¶ 52    Again, we recently considered exactly the same constitutional challenge in our decision in *Midwest Gaming*, and we determined that we had no need to resolve the question of whether the tax imposed by the Tax Ordinance was in fact an occupation tax, because we found that even if it was, it was specifically authorized by the legislature through section 5-1009 of the Counties Code (55 ILCS 5/5-1009 (West 2012)). *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 78.

¶ 53    Section 5-1009 provides:

        "Limitation on home rule powers. Except as provided in Section 5-1006, 5-1006.5, 5-1007 and 5-1008, on and after September 1, 1990, no home rule county has the authority to impose, pursuant to its home rule authority, a retailer's occupation tax, service occupation tax, use tax, sales tax or other tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property. Notwithstanding the foregoing, this Section does not preempt any home rule imposed tax such as the following: (1) a tax on alcoholic beverages, whether based on gross receipts, volume sold or any other measurement; (2) a tax based on the number of units of cigarettes or tobacco products; (3) a tax, however measured, based on the use of a hotel or motel room or similar facility; (4) a tax, however measured, on the sale or transfer of real property; (5) a tax, however measured, on lease receipts; (6) a tax on food prepared for immediate consumption and on alcoholic beverages sold by a business which provides for on

                                    - 13 -

premise consumption of said food or alcoholic beverages; or (7) other taxes not based on the selling or purchase price or gross receipts from the use, sale or purchase of tangible personal property. This Section does not preempt a home rule county from imposing a tax, however measured, on the use, for consideration, of a parking lot, garage, or other parking facility. This Section is a limitation, pursuant to subsection (g) of Section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax." 55 ILCS 5/5-1009 (West 2012).

¶ 54    In *Midwest Gaming*, we noted that section 5-1009 specifically provides that it "does not preempt any home rule imposed tax such as the following: *** (7) other taxes not based on the selling or purchase price or gross receipts from the use, sale or purchase of tangible personal property." 55 ILCS 5/5-1009 (West 2012). Again, it is undisputed that the tax imposed by the Tax Ordinance is not based on the selling or purchase price or gross receipts from the use, sale, or purchase of tangible personal property. Accordingly, based on the plain language of section 5-1009, the tax is permitted under subsection (7).

¶ 55    Plaintiffs argue that "rather than providing *** by law [for] an occupation tax on gambling operations, the General Assembly explicitly prohibited the imposition of any such tax based on Section 21 of the Riverboat Gambling Act as incorporated into the Video Gaming Act." However, as we concluded earlier, section 21 does not apply to home rule units such as the County, so we do not find this argument persuasive.

¶ 56    Plaintiffs further argue that subsection (7) "does not *** authorize any tax and has not been relied upon by any court as evidence of a tax's authorization." However, since briefing in the instant case, we have, in fact, relied on subsection (7) in *Midwest Gaming* and continue to do so in the instant case. Accordingly, the trial court properly granted defendants' motion for summary judgment.

¶ 57                                IV. License for Revenue

¶ 58    Finally, plaintiffs argue that the trial court incorrectly found that the tax was not an impermissible license for revenue. As noted, the Illinois Constitution provides that "[a] home rule unit shall have only the power that the General Assembly may provide by law *** (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." Ill. Const. 1970, art. VII, § 6(e). Our supreme court has explained that " '[t]he phrase "to license for revenue" describes those situations in which a governmental unit that did not have the power to tax attempted to raise revenue by the exercise of its police power.' " *Paper Supply Co. v. City of Chicago*, 57 Ill. 2d 553, 576 (1974) (quoting *Rozner v. Korshak*, 55 Ill. 2d 430, 433 (1973)); see also *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354, 365 (1986).

¶ 59    We considered the same constitutional challenge in *Midwest Gaming*. There, the trial court found that the tax was a license for revenue, pointing to several of the same " 'indicia of a license for revenue' " as do plaintiffs in the instant case: "the fact that the tax was imposed on the holders of gaming licenses who own gambling machines and requires those engaged in displaying the machines to the public to (1) register their gambling machines, (2) conspicuously affix the emblem issued by the County to each gambling device, (3) label each gambling machine with the name, address, and telephone number of the person displaying the gambling machine for play or operation by the public, (4) be subject to penalties if they display a gambling machine without the emblem, (5) maintain accurate and complete documents, books, and records of each transaction or activity subject to the tax, and (6) make their

- 14 -

premises available for inspection, audit, and copying to the County." *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 92. In reversing the trial court, we noted there that such requirements did not transform the tax into a license for revenue, relying on our supreme court's decision in *Paper Supply Co. v. City of Chicago*, 57 Ill. 2d 553, 575-76 (1974), and noting that "the tax ordinance in *Paper Supply* also required the taxed party (an employer) to register and our supreme court held it was not a license for revenue." *Midwest Gaming*, 2015 IL App (1st) 142786, ¶ 95.

¶ 60        As noted, " '[t]he phrase "to license for revenue" describes those situations in which a governmental unit that did not have the power to tax attempted to raise revenue by the exercise of its police power.' " *Paper Supply*, 57 Ill. 2d at 576 (quoting *Rozner*, 55 Ill. 2d at 433). Here, the County did have the power to tax and did so through the Tax Ordinance. This is not a license for revenue, despite plaintiffs' contention otherwise. Accordingly, the trial court properly granted defendants' motion for summary judgment.

¶ 61                                          CONCLUSION

¶ 62        For the reasons set forth above, the trial court properly granted defendants' motion for summary judgment on all counts of plaintiffs' complaint. First, the tax imposed by the Tax Ordinance was not preempted by section 21 of the Riverboat Gambling Act as incorporated by the Video Gaming Act. Second, the County had the home rule authority to enact the Tax Ordinance since it pertained to its local government and affairs. Third, the tax was not an impermissible occupation tax since, even if it was an occupation tax, it was authorized by the legislature through section 5-1009 of the Counties Code. Fourth, the tax was not an impermissible license for revenue.

¶ 63        Affirmed.